```
         IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF OHIO
                    EASTERN DIVISION
```

Victoria Zwerin,                :

        Plaintiff,          :

   v.                           :     Case No.  2:10-cv-488

533 Short North, LLC,           :     JUDGE EDMUND A. SARGUS, JR.
et al.,                               Magistrate Judge Kemp
                               :

        Defendants.

<u>OPINION AND ORDER</u>

    This Fair Labor Standards Act case is currently before the Court for a ruling on plaintiff's emergency motion for a protective order, which was filed on May 6, 2011.  With the filing of the reply brief on May 18, 2011, it is now fully briefed.  For the following reasons, the motion will be denied.

I.

    The overall background of this case has been explained in prior orders of the Court, so that background will be set forth here in very brief fashion.  In this FLSA case, Ms. Zwerin, who worked as a bartender at one of defendants' restaurants, claims that she was required to participate in an unlawful "tip pooling" arrangement - unlawful because it included management employees.  She also makes a claim for unpaid overtime compensation.  She seeks to represent either or both an "opt-in" class under 29 U.S.C. §216(b) and a class to be certified under Fed.R.Civ.P. 23.  The Court has not yet issued any notice concerning the right of potential plaintiffs to opt in.

    A gentleman named Grant Dziak is a potential class member.  He signed a "Consent to Join Collective Action and Be Represented by Morgan and Morgan, P.A." on February 28, 2011, and that has been filed with the Court.  <u>See</u> Doc. #20.  On the same day, he signed a declaration which Ms. Zwerin attached to her motion to

certify a collective action.  See Doc. #26.  That declaration, in summary, says that bartenders at defendants' restaurants were never paid for more than forty hours per week no matter how many hours they worked, were paid "tipped minimum wage" rather than regular minimum wage, and got their tips from a tip pool in which the bar managers also participated.

Since signing his declaration, Mr. Dziak has had a number of conversations or communications with two of the individual defendants, Chris Corso and Brian Swanson.  After some of these conversations had taken place, Mr. Corso sent Mr. Dziak a text message.  An image of the message as it appeared on Mr. Dziak's phone is attached as an exhibit to the motion for a protective order.  Because its content is important to the resolution of this motion, it will be quoted in full just as it appeared on Mr. Dziak's phone.  It reads:

> Bro I just read that entire thing your signed for that attorney.  In the name of working together can u retract that thing for me?  Some harsh stuff in their.  All you need to do is email him and say you want it retracted.  Come on man I never did you wrong.

Mr. Dziak replied that if he did so it would be "purgery."  However, Mr. Corso assured him it would not because the declaration had not been sworn to under oath or before a judge.  He asked Mr. Dziak to "cut me a little slack" by either retracting it or signing a new letter stating that he was "mad" when he signed it.  Mr. Dziak then reported these communications to his attorneys.  See Plaintiff's Emergency Motion for a Protective Order, Exhibit 1.

Defendants do not argue that this message is not genuine.  However, they have submitted affidavits attempting to place this exchange in a larger context.  According to them, Mr. Dziak was never a manager (which, in his declaration, he claimed to have been) but rather was a bartender and then a head bartender.  He

-2-

quit his employment in February, 2011, and then took a similar job with a competitor, after which he attempted to hire a number of defendants' bartenders. Mr. Dziak and Mr. Corso then had a meeting to work things out, after which tensions between the two eased. A proposal was then made that the competing companies co-host an event, but defendants were supposedly reluctant to do that because Mr. Dziak had submitted a "false" declaration in this case. According to defendants, Mr. Dziak admitted his declaration was false but was worried about the consequences of withdrawing it. That led to the message which Mr. Corso sent on April 21, 2011. Defendants have described it as "the last in a mutual series of meetings, calls, and texts designed to patch up a business relationship." Defendants' memorandum in opposition, Doc. #50, at 11.

II.

The Court's analysis of the legal issue presented by these facts begins with the premise that, other things being equal, a defendant does nothing wrong by communicating directly with someone who may become, but is not yet, a member of either a class for which certification is sought under Fed.R.Civ.P. 23 or an opt-in class under 29 U.S.C. §216(b). See, e.g., Longcrier v. HL-A Co., Inc., 595 F.Supp.2d 1218, 1225-26 (S.D. Ala. 2008), citing, inter alia, Parks v. Eastwood Ins. Services, Inc., 235 F.Supp.2d 1082, 1085 (C.D. Cal.2002). In a case involving a potential Rule 23 class, the Supreme Court, in Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981), held that Rule 23 gives the district court "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." That duty and authority extends to orders restricting communications between counsel and potential class members - and in that case, it was plaintiffs' counsel who were instructed not to communicate with

the potential class members - but such orders may not be issued routinely. Rather, the Court held that this kind of order may issue only "based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." Id. at 101. Although the Court did not expressly consider the impact of the First Amendment in this context, it did observe that this type of order is a prior restraint on communications and that any court asked to issue such an order should give "attention to whether the restraint is justified by a likelihood of serious abuses." Id. at 104. These general principles have been applied to §216(b) opt-in class actions as well. See, e.g., Maddox v. Knowledge Learning Corp., 499 F.Supp.2d 1338 (N.D. Ga. 2007); cf. Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989) (acknowledging the applicability of these concepts to an opt-in action brought under the Age Discrimination in Employment Act, 29 U.S.C. §§621 *et seq*.

As a general matter, courts have expressed concerns with at least two types of communications which might be made to potential class members - those containing misrepresentations, and those which may discourage persons from opting into the class. See Belt v. Emcare, Inc., 299 F.Supp.2d 664, 668 (E.D. Tex. 2003); see also Dominguez v. Don Pedro Restaurant, 2007 WL 1650289 (N.D. Ind. June 1, 2007). One example of the latter is threatening employees with possible financial harm if they choose to participate. See, e.g., Hampton Hardware Inc. v. Cotter, 156 F.R.D. 630, 631-32 (N.D. Tex.1994). However, regardless of the basis upon which relief is being sought, "[t]he party moving for a protective order must make two showings: (1) that a particular form of communication has occurred or is threatened to occur, and (2) that the particular form of communication at issue is abusive and threatens the proper functioning of the litigation."

-4-

<u>Ojeda-Sanchez v. Bland Farms</u>, 600 F.Supp.2d 1373, 1378 (S.D. Ga. 2009).

Here, there is no dispute over the content of the allegedly abusive communication, given that it consists primarily of a text message and that a copy of that text message, in its original image form as it appeared on Mr. Dziak's cell phone, is an exhibit to Ms. Zwerin's motion. The key question is, according to 533 Short North, not what was in the text message, but the context in which it was sent. There is a serious dispute about that, which the Court cannot resolve on the basis of paper filings. However, according to Zwerin, the text message speaks so loudly for itself - and is so clearly an improper attempt to undermine the class action - that the context is largely irrelevant.

The Court agrees that the context of these exchanges is largely irrelevant, but for a different reason than that advanced by Ms. Zwerin. At this point, due to his signing of the opt-in form, Mr. Dziak is represented by counsel. This immunizes him from any contact with opposing counsel, and also provides him with the ability to analyze and discuss any communications from the defendants with his attorneys. In fact, he has already done so. There is no possibility that these communications will discourage him from joining the suit because he did so prior to their having been made. At this point, there is no suggestion that these communications have influenced him to change his decision about being an opt-in plaintiff, and, since he no longer works for the defendants, their ability to pressure him with regard to the issues raised in this case seems limited or non-existent.

Additionally, Ms. Zwerin has not submitted any evidence that defendants have engaged in any improper communications with other opt-in plaintiffs or persons who are still potential but unnamed

class members.  Defendants have submitted affidavits in support of their memorandum in opposition to class certification from various potential class members, but there is no evidence that any of these affidavits were obtained or influenced by either coercion or misrepresentations.  In short, the text sent to Mr. Dziak - improper as it may appear to be on its face - is, based on this record, a single, isolated incident which, even if it is as improper as Ms. Zwerin suggests, does not support the issuance of a blanket protective order restricting any and all communications between defendants (or their counsel) and potential class members.  The facts might suggest some need for restrictions on communications with Mr. Dziak, but given his participation in the case and his representation by Ms. Zwerin's counsel, it appears that he is fully capable of either refusing to engage in such communications without the need for a court order, or bringing any such communications to the attention of his counsel.  Given that, the Court sees no need to protect Mr. Dziak through the issuance of an order.  Thus, while the text message at issue is certainly capable of being interpreted as an effort to dissuade Mr. Dziak from further participation in the case, and even an effort to cause him to commit perjury - something that may well be addressed in a different context - the Court perceives no future risk of injury that would justify what is, in essence, an injunction (and would also be a prior restraint on speech).  Ms. Zwerin's motion for such an order will therefore be denied.

III.

Based on the foregoing, plaintiff's emergency motion for a protective order (#48) is denied.

IV.

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for

reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 91-3, pt. I., F., 5.  The motion must specifically designate the order or part in question and the basis for any objection.  Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect, notwithstanding the filing of any objections, unless stayed by the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.4.

/s/ Terence P. Kemp
United States Magistrate Judge